IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JEAN B. GERMAIN | * | |
| Plaintiff | * | |
| v | * | Civil Action No. JFM-09-3097 |
| BOBBY P. SHEARIN and JAMES HOLWAGER | * | |
| | * | |
| Defendants | | |

\*\*\*

## MEMORANDUM

Pending is defendants' motion to dismiss or for summary judgment, construed as a motion for summary judgment. ECF No. 11. Plaintiff opposes the motion. ECF No. 13 and 15. Upon review of the papers filed, the court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2010).

**Background**

Plaintiff claims he was sexually assaulted by another inmate on August 1, 1998, while he was confined at Jessup Correctional Institution (JCI). He states his assailant was his cell mate and when the unwanted sexual contact began, plaintiff grabbed a knife and stabbed his cell mate 104 times. Plaintiff was later convicted of attempted second-degree murder and received an additional 30 year sentence. In addition, plaintiff was transferred to Maryland Correctional Adjustment Center (MCAC), where he remained until 2003. ECF No. 1.

Plaintiff was returned to JCI in 2003 and assigned to administrative segregation pending evaluation by a psychologist. Plaintiff was evaluated by Dr. Musk, chief psychologist at JCI, who recommended that plaintiff be assigned to a single cell. Plaintiff's single cell assignment was approved by the chief of security at JCI, Burlie Frink, who issued "single cell papers" to

plaintiff. ECF No. 1 at p. 2.

On October 30, 2008, plaintiff was transferred from JCI to North Branch Correctional Institution (NBCI). Plaintiff claims he made authorities at NBCI aware of his need for a single cell shortly after he arrived via letter to Dr. Holwager, the chief psychologist at NBCI. He states he explained the 1998 incident to Holwager, gave Holwager a copy of Musk's recommendation, and explained his fears regarding assignment to a double cell. Holwager told plaintiff not to refuse a housing assignment and promised plaintiff he would be seen by a group of psychologists who would decide whether he would be granted single cell status. Plaintiff states that shortly after his conversation with Holwager, he was moved from administrative segregation to a double cell in general population. Soon thereafter, however, plaintiff was assigned to a job and provided a single cell as incentive for the job, but another inmate was moved into the cell due to a housing shortage. *Id*.

On May 11, 2009, plaintiff's request for a move to another housing unit where he could be provided with a single cell was granted. On June 29, 2009, however, plaintiff was told he would be moved into a double cell by Captain Arnold allegedly because plaintiff refused to withdraw an administrative remedy procedure complaint (ARP) he had filed. Plaintiff claims that while he was in a holding cell waiting to be moved, Lieutenant Stotler decided to allow plaintiff to stay in the building in the single cell. *Id*.

Due to the threat of losing the single cell assignment, plaintiff suffered an anxiety attack. Plaintiff claims he wrote several letters to the psychology department in an attempt to have the single cell issue addressed. It was not until August 7, 2009, that plaintiff states he was seen by a psychiatrist who diagnosed plaintiff with depression and prescribed Prozac. *Id*.

Plaintiff alleges his personal property was stolen by a correctional officer on October 7,

2009, and that when he wrote an ARP regarding the officer, he was moved from his single cell to a double cell in retaliation for the complaint. Plaintiff refused to move into the double cell, was issued an infraction for refusing housing, and placed on disciplinary segregation. During his assignment to segregation plaintiff alleges he was held in a room with no property and forced to sleep on the cold floor. He states on October 14, 2009, he was placed on suicide watch and spoke to a psychologist, Ms. Booth, the following day. Plaintiff claims Booth agreed that he should be assigned to a single cell. Plaintiff was later found guilty of refusing housing and disobeying an order and sentenced to serve 30 days in disciplinary segregation. *Id.* at p. 3.

Plaintiff claims that two psychologists, Dr. Hafercamp and Ms. Booth, a licensed clinical professional counselor (LCPC), agreed with Dr. Musk that he should be assigned to a single cell, but security staff have rejected those recommendations. Plaintiff further claims that Holwager believes that plaintiff is not qualified to be given single cell status for psychological reasons because plaintiff has not shown he is incompetent. Plaintiff states Holwager's position forecloses any real opportunity for a psychological evaluation and that he will be forced to share a cell with another inmate. Plaintiff admits he was assigned to single cell status for a period of three months by Warden Shearin when he found plaintiff's ARP meritorious, but states he does not believe the assignment is permanent. *Id*. at p. 4.

Defendants state plaintiff does not meet the Department of Corrections criteria for single cell status for psychological reasons, but do not provide a copy or synopsis of the criteria. ECF No. 11. Holwager states that the plaintiff suffers from DSMIV Anxiety Disorder 300-00, but the disorder is not severe enough to require a single cell, as determined by the NBCI single cell committee.

Plaintiff was seen on November 3, 2009, for individual therapy with Booth and he told her why he believes he needs a single cell. Booth had previously assigned him to a single cell for three (3) months, but indicated he could not be guaranteed a single cell for the rest of his life. She told plaintiff he would be moved from his current housing unit and would need to regain single cell status through a job assignment or by talking to the housing unit psychologist.

On January 8, 2010, plaintiff was seen by Dr. Schellhase for medication management and expressed concern about being assigned to a single-cell. ECF No. 11 at Ex. 2. Plaintiff has been in a single cell since November 10, 2009, and during this period has incurred two minor non-violent infractions that have been handled informally.

Plaintiff complained in an ARP that he was retaliated against by a Housing Unit sergeant because he filed a complaint against him. Investigation into plaintiff's complaint revealed that he was placed in a double cell in order to allow other inmates with "preferred jobs" to be assigned to single cells. Plaintiff appealed this finding, but the Commissioner dismissed the appeal because housing assignment decisions are made by the custody staff assigned to the Unit. Plaintiff had no right at the time to housing in a single cell, and no further action was to be taken.

In a previous ARP, plaintiff sought single cell status based on his mental health issues. The response denying relief stated simply that plaintiff did not meet the criteria for being single celled for psychological reasons. Despite his failure to meet the criteria, however, it was recommended that plaintff be placed in a single cell for three months, and thereafter re-evaluated.

## Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any

affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotations omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

Plaintiff's claim appears to be that his psychological condition is not being addressed due to the failure to find him suitable for permanent single cell status. There is no underlying distinction between the right to medical care for physical ills and its psychological and psychiatric counterpart. *See Bowring v. Goodwin*, 551 F.2d 44, 47 (4th Cir. 1977). A prisoner is

entitled to such treatment if a "[p]hysician or other health care provider, exercising ordinary skill and care at the time of the observation, concludes with reasonable certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial." *Id.* The *Bowring* court further concluded that the aforementioned right to such treatment is based upon the essential test of medical necessity and not upon that care considered merely desirable. *Id.* at 48.

There is no constitutional guarantee regarding cell assignments. "In formulating and executing decisions relating to cell assignments, we must allow prison authorities the discretion to take into account the particular safety and security concerns facing male inmates, even though such considerations result in disparate treatment based upon gender." *Veney v. Wyche,* 293 F.3d 726, 734 (4th Cir. 2002). To the extent plaintiff suffers an anxiety disorder, his condition is being treated by psychology department staff. While he may not agree with the assessment that his disorder is not so severe to warrant permanent single cell status, the denial of that status does not constitute deliberate indifference to a serious psychological need. Additionally, this court is mindful that if plaintiff's threat to kill another inmate and/or himself in the event he is assigned to a double cell becomes the sole criteria for single cell status, prison officials will be left vulnerable to manipulation of housing needs by other inmates. Notwithstanding those considerations, plaintiff has been diagnosed with an anxiety disorder and has reacted violently toward another inmate in the past, placing defendants on notice of a potential for injury.[1]

Defendants assert, *inter alia*, they are entitled to a qualified immunity defense. When considering the applicability of a qualified immunity defense, this court must consider whether at

---

[1] It is unclear to the court whether defendants' position regarding plaintiff's entitlement to single cell status would change if he did in fact meet criteria referenced but not included in the record.

6

the time of the claimed violation the right asserted is clearly established and "whether a reasonable person in the official's position would have known that his conduct would violate that right." *Rish v. Johnson*, 131 F. 3d 1092, 1095 (4th Cir. 1997), *citation omitted*. While it is true generally that prisoners are not entitled to particular cell assignments and, apparently, there are some inmates whose mental health does entitle them to single cell status, plaintiff is not currently deprived of the assignment he seeks. Defendants do not indicate that the decision to deny permanent single cell status to plaintiff will remain unexamined indefinitely. Indeed, it appears the decision is an ongoing process. "[Q]ualified immunity protects law officers from 'bad guesses in gray areas' and it ensures that they may be held personally liable only 'for transgressing bright lines.'" *Gomez v. Atkins*, 296 F. 3d 253, 261 (4th Cir. 2002), quoting *Maciariello v. Sumner*, 973 F. 2d 295, 298 (4th Cir. 1992). Defendants have not crossed a bright line and are, therefore, entitled to judgment in their favor.

      A separate order follows.

<u>November 18, 2010</u>                  _____/s/_____
Date                                            J. Frederick Motz
                                                      United States District Judge